UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jose Salazar, individually and on behalf of all others similarly-situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>Cuetes Corp., and Does 1-50, inclusive,<br><br>      Defendants. | **Case No. 1:20-cv-8167-AEK** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
<u>FOR APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# INTRODUCTION

Subject to this Court's approval, Plaintiff Mr. Jose Salazar ("Mr. Salazar"), individually and on behalf of the class (the "NYLL Class") (collectively, "Plaintiffs"), and Defendants Cuetes Corp., Inc., and Does 1-50, (collectively, "Defendants") have agreed to settle this wage and hour class and collective action lawsuit for a One Hundred Seventy-Five Thousand Dollars ($175,000.00). The settlement satisfies all criteria for approval of a Rule 23 class action settlement because it resolves a *bona fide* dispute, was the result of arm's length settlement negotiations conducted by counsel well-versed in wage and hour law with the assistance of the Court's settlement conferences, and is fair, reasonable, and adequate under the circumstances.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) preliminarily approving the $175,000.00 settlement set forth in the Settlement Agreement and Release ("Proposed Settlement") (*see* Declaration of Benjamin Weisenberg ("Weisenberg Decl."), **Ex. A**);[1] (2) approve the proposed Notice and direct its distribution; (3) and schedule a final fairness hearing within 30 days after the deadline for the putative NYLL Class members to timely opt out, or any qualified person to file an objection.

# SUMMARY OF THE SETTLEMENT TERMS

## I. The Settlement Fund

The Settlement Agreement establishes a maximum Gross Settlement Fund ("GSF") of $175,000.00 to settle claims against the Defendants. *See* **Ex. A ¶** 20. The Agreement does not contain a confidentiality provision or a non-disparagement provision. *Id*. The Agreement's release of claims is limited to, as relevant to this request for approval, the NYLL claims at issue in this

---

[1] Hereinafter, all Exhibits referenced in this motion are attached to the Weisenberg Declaration, submitted concurrently in support of this motion.

**Case No. 1:20-cv-8167-AEK**

litigation. *Id.*, Pages 18-19. Separately, Defendants will pay their share of payroll taxes in addition to the sum of the GSF.

## II.      Eligible Employees

The NYLL Class includes all current and former non-exempt, hourly employees of Defendants employed at any time from October 1, 2014, through September 1, 2021. *Id.* ¶ 1.

## III.     Settlement Administration and Notice Process

An independent third-party Claims administrator will administer the settlement and the fees. *Id.* ¶ 4. The parties have retained Settlement Services, Inc., an experienced wage and hour claims administrator, to serve as the Settlement Claims Administrator in this matter. The expenses charged by the Claims Administrator will be paid for from the Settlement Fund. *Id.* ¶ 24 (a).

Within 30 days of the entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice Packet to members of the Settlement Class, consisting of a long-form Notice, with postage pre-paidThe Notice Packet will provide members of the Settlement Class with information as to the Proposed Settlement and as to where they may obtain more information about the Proposed Settlement. The Notice Packet will inform Settlement Class members that if they do not submit a valid Opt-out Form, they will be issued payment pursuant to the terms of the Settlement Agreement and they will be bound by the terms of the Settlement Agreement, including the release.

Settlement Class members who submit Opt-out Forms will receive no payment, will not be bound by the settlement, and they will not waive their right to pursue New York State law claims.

## IV.     Settlement Award

Each member of the NYLL Class who does not properly Opt-out of the Class will be allocated a proportionate share of the Net Settlement Fund pursuant to an allocation formula based

**Case No. 1:20-cv-8167-AEK**

on the number of workweeks that they worked during the class period.

---

# ARGUMENT

## I.   Preliminary Approval of the Class Action Settlement

Courts generally promote early resolution and settlement of class actions because it allows parties to avoid timely and expensive litigation while simultaneously lightening the burden on the courts. "[C]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (Ellis, M.J.).  Preliminary approval only requires an "initial evaluation" of the proposed settlement's fairness on the basis of written submissions and an informal presentation by the settling parties. *See* Newberg, Herbert B. & Alba Conte, Newberg on Class Actions ("Newberg") (4th ed. 2002), § 11.25. The court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *see also* Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . .and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).  "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation and citation omitted); *see also Wright v. Stern*, 553 F. Supp. 2d 337,

**Case No. 1:20-cv-8167-AEK**

343 (S.D.N.Y. 2008) (recognizing that courts rely on adversary nature of litigated FLSA case resulting in settlement as indicia of fairness). Accordingly, if the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion … [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) (same).

Rule 23(e) necessitates court approval for class action settlements to ensure procedural and substantive fairness. Fed.R.Civ.P. 23(e). To assess procedural fairness, courts examine the negotiating process that lead to the settlement in question. *See Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.2005); *see also D'Amato v. Deutsche Bank*, 236 F .3d 78, 85 (2d Cir.2001). To determine substantive fairness, courts consider whether the settlement's terms are fair, adequate, and reasonable in accordance with the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974) ("*Grinnell*").

Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the class members to inform them of the settlement and gives them an opportunity to complete and return a claim form (if applicable), object to the settlement, or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input. Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation" to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. As explained below, the Proposed Settlement is both procedurally and substantively fair.

a. *Procedural Fairness*

**Case No. 1:20-cv-8167-AEK**

The settlement reached by the parties is reasonable, procedurally fair and is not the product of collusion. The settlement was agreed upon only after arm's length negotiations—with the Court's assistance during Settlement Conferences—once the parties had engaged in a thorough investigation of the relevant claims and defenses and vigorously exchanged arguments back and forth with one another. The parties exchanged relevant information and documents that allowed both parties to evaluate Plaintiffs' claims and calculate potential damages. Plaintiffs' Counsel believes to be in the best interest to the Settlement Class in light of the costs and risks of continued litigation.

Class Counsel examined Defendants' data showing time, pay, and wage notices for a representative sample set of the putative class. The Parties numerous one-on-one settlement discussions culminated with a preliminary resolution on February 22, 2022, with the assistance of this Court. Under the circumstances, these arm's-length negotiations raise a presumption that the Proposed Settlement meets the requirements of due process. *See Wal–Mart Stores*, 396 F.3d at 116; *see also Reyes*, 2011 WL 4599822, at *4. The Parties have subsequently renegotiated the Settlement Agreement to modify the percentage earmarked for payments to the Settlement Class and the percentage earmarked for payments to the FLSA Collective given the Court's informal feedback during the previously conducted Collective Opt-In process. *See* Settlement Agreement, ECF Dkt. No. 76, et seq. The Court should find the settlement procedurally fair pursuant to Rule 23(e).

b.  *Substantive Fairness*

The GSF of $175,000 fulfills Rule 23's substantive fairness requirement. *Grinnell* provides the legal framework for determining the substantive fairness of a class action settlement. The *Grinnell* factors include a consideration of:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the risks;

*Id.* The terms and conditions of the proposed settlement satisfy all of the *Grinnel* factors. In addition to the below discussed *Grinnell* Factors, the parties previously submitted a Joint Letter in support of approval of the Settlement Agreement that addresses the *Wolinsky* Factors and how each factor supports approving the Settlement Agreement. *See* ECF Dkt. No. 44.

***Grinnell* Factor No. 1.** The first *Grinnell* factor supports preliminary approval because litigating the unique facts and circumstances of this case through trial would be complex, expensive, and time-consuming. Defendants maintained an archaic, confounding, and mostly incomplete payroll system. Plaintiffs' time sheets were never accurately maintained by Defendants. Defendants' payroll processes resulted in systemic, non-uniform errors. For Plaintiffs to prove their allegations, however, the parties will be required to locate, collect, organize, scan and review hundreds – if not thousands – of pages of largely incomplete and inaccurate payroll data. After completing such a time consuming and burdensome review process, Plaintiffs are not

**Case No. 1:20-cv-8167-AEK**

guaranteed to be in possession of accurate time and payroll data for the New York Class and FLSA Collective. "[P]reparation for trial would ... seriously prolong the outcome of this suit in addition to consuming tremendous amounts of time, expenses and judicial resources." *Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548 (RLE), 2012 WL 1320124 at *7 (S.D.N.Y. Apr. 16, 2012) (Ellis, M.J.); *See also Sewell v. Bovis Lend Lease, Inc.*, *supra*, 2012 WL 1320124 at *7. ("[l]itigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action.").

*Grinnell* **Factor No. 2.** Because notice of the Proposed Settlement has not gone out to the Settlement Class yet, the second *Grinnell* factor does not weigh in favor of or against preliminary approval and is thus neutral.

*Grinnell* **Factor No. 3.** The third *Grinnell* factor also weighs in favor of preliminary approval because the Parties have engaged in sufficient discovery to reach settlement. The most important inquiry here is "whether counsel had an adequate appreciation of the merits of the case before negotiating." In *re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir.2004) (internal quotation marks omitted). The parties' commitment to open, informal exchange of information allowed Plaintiffs to obtain sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate damages. For example, the parties negotiated a representative sample set of Plaintiffs, exchanged the time and pay records for the representative sample set for the entire statutory period of time (with the understanding that the time and pay records were largely incomplete and inaccurate), and the parties estimated damages by extrapolating the representative sample set's actual time and pay records.

*Grinnell* **Factors Nos. 4 and 5.** The fourth and fifth *Grinnell* factors also weigh in favor of preliminary approval because of the risks plaintiffs faced in proving liability and demonstrating

8

damages. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D .N.Y.1997). Mediation and settlement allow parties to avoid the uncertainty of litigation. *See In re Ira Haupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y.1969); *See also Velez v. Mqjik Cleaning Serv., Inc.*, No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous challenges with respect to demonstrating liability, because the Defendants' records are incomplete and inaccurate. Defendants also possess the procedural defense that the Class is not certifiable due to the facts and circumstances unique to each putative Collective and Class member. Finally, Plaintiffs – even if they are successful in establishing liability and certifiability – will face enormous difficulties in establishing damages for each putative Class and Collective member given the incomplete records upon which Plaintiffs would prosecute their damages case.

**Grinnell Factor No. 6.** The sixth *Grinnell* factor also weighs in favor of preliminary approval because of the risks Plaintiffs face pertaining to class certification. Any opposition to a motion for certification would likely require further discovery and further briefing. Even if class certification were granted, Defendants might seek to appeal the decision under Federal Rule of Civil Procedure 23(f). Approval of the proposed settlement eliminates the aforementioned burdens and risks. *See Sukhnandan v. Royal Health Care of Long Island LLC*, 12 Civ. 4216 (RLE), 2014 WL 3778173 at *7 (S.D.N.Y. July 31, 2014) (Ellis, M.J.).

**Grinnell Factor No. 7.** Regarding the seventh *Grinnell* factor—even if Defendants could have withstood a greater judgment—a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (W.D.N.Y.2005). The $175,000.00 recovery in this case is substantial and confers a great benefit unto the Settlement Class. Defendants continue to face tax liabilities and other

liabilities that make any greater judgment extremely unlikely given the totality of the circumstances.

*Grinnell* **Factors Nos. 8 and 9.**  The eighth and ninth *Grinnell* factors also weigh in favor of final approval. "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co., supra,* 228 F.R.D. at 186.  The Proposed Settlement amount of $175,000.00 is well within the range of reasonableness given the Defendants inability to pay a greater amount.  Considering the best possible recovery and the aforementioned hazards inherent in litigation, the Proposed Settlement provides the Settlement Class with the opportunity to partake in meaningful recovery—which many would forgo in absence of this litigation—for their claims.

Federal Rules of Civil Procedure 23(e) requires Court approval for the settlement of a Class Action.  This is a two-step process, with the Court first reviewing a motion for preliminary approval and the proposed notice to class members before considering a motion for final approval. When the Court has not yet certified a class, it must determine at the preliminary approval stage whether the proposed settlement class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  The proposed settlement before this Court is fair, because the proposed settlement satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

This proposed settlement satisfies the requirements of numerosity, because the putative New York Labor Law Class consists of 260 putative Class Members making joinder of all members impracticable.  *See Consolidated Rail Corp v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995).  This proposed settlement satisfies the requirements of commonality, because the class

**Case No. 1:20-cv-8167-AEK**

members share in common questions of law and fact. A "single common question may be sufficient to satisfy this rule. *See Marisol A. ex rel Forbes v. Giuliani,* 929 F.Supp.662, 690 (SDNY 1996). Plaintiffs have alleged a single unlawful employment scheme universally applied to all members of the proposed Settlement Class that deprived the Settlement Class of all wages and statutorily required notices concerning their wages. As such, numerous questions of law and fact exist that pertain to all members of the proposed Settlement Class. The proposed settlement satisfies the requirements of typicality in that the claims of the representative Mr. Salazar arise from the same course of events as the proposed Settlement Class as a whole. *See Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993). The proposed settlement satisfies the requirements of adequacy of representation because the representative party Mr. Salzar will fairly and adequately protect the interest of the class, has no conflict of interest with the class, and class Counsel is qualified, experienced, and generally able to conduct the litigation.

**II.    Class Counsel and Counsels' Attorneys' Fees.**

The Firm is requesting attorneys' fees and litigation costs in the amount of $20,000. *See* Settlement Agreement, Paragraph 24 (b); *see also* **Ex. 3**, Contingency Agreement and Firm Time Records.

There are two ways to compensate attorneys for successful prosecution of statutory claims: the lodestar method and the percentage of the fund method. *See McDaniel v. Cnty. Of Schenectady,* 595 F. 3d 411, 417 (2d Cir. 2010). Courts tend to prefer the percentage method over the lodestar method to compensate attorneys for successful prosecution of statutory claims, because the percent method is closely aligned with market practices and "is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients," *Chavarria v. New York Airport Service, LLC,* 875 F. Supp. 2d

**Case No. 1:20-cv-8167-AEK**

164, 177 (E.D.N.Y 2012.), the percentage method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours, *See Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013); *see also Costagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending the plaintiffs' attorneys for negotiation early settlement), and the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. of N.Y., Inc.,* No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)).

Undersigned counsel has worked in excess of 20.99 hours on this matter as of the date of this submission. The Firm's staff has worked a total of 26.88 hours on this matter as of the date of this submission. Plaintiffs' Counsel has spent an additional amount of time on this matter since its February 2022 submission – and its subsequent hearings and filings - of the Firm's billing records and anticipates spending additional time in the future participating in the administration of the settlement, responding to inquire from the putative Collective and Class members, and handling unexpected issues that will undoubtedly arise. The requested fee award is also meant to compensate for that time. The hours reported are reasonable for a case of this complexity and magnitude.

Undersigned counsel private practice is almost entirely focused on representing employees in workplace disputes. Undersigned counsel was admitted to the practice of law in the State of Washington in 2011, in the State of New York in 2015, the District of Columbia in 2014, and the State of California in 2018. Undersigned counsel is an experienced wage and hour litigator, prosecuting claims in State and Federal Courts. For the purpose of example only, undersigned

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

**Case No. 1:20-cv-8167-AEK**

counsel has and/or continues to represent employees in the following wage and hour litigations: *Gomes v. Continental et al*, 18-cv-06788-DLI-SJB; *Luina et al v. Level 3 Funding*, 18-cv-11208-VSB; *Luyando v. Pay-O-Matic*, 18-cv-00885-FB-SMG; *Naik, et al v. Swagat Restaurant, Inc. d/b/a Saphhire Indian Cuisine*, et al, 19-cv-05025-JMF; *Ortiz v. California Cemetery and Funeral services, LLC*, 18CV331774; *Ragaglia et al v. Pontillo's Pizzeria-Gates et al.*, 6:19-cv-06006-CJS-MWP; *Marin v. Apple-Metro, Inc.*, 12-cv-5274; *Palos v. All American Homecare Agency, Inc.*, 17-cv-05360; *Crowder v. ARC HealthResources of Rockland, Inc.*, 17-cv-04086; *Simmions et al. v. Pierless Fish Corp.*, 17-cv-03044; *Fuentes Diaz v. Steps In Home Care, Inc.*, 17-cv-09459; *David Dalton v. GEM Financial Services, Inc.*, 15-cv-05636.  The foregoing is not an exhaustive list of the wage and hour litigations undersigned counsel has and/or is responsible for prosecuting.

In addition to prosecuting wage and hour litigations on a contingency fee basis, undersigned counsel represents professionals and executives in restrictive covenants (*i.e.*, non-compete, non-solicitation, and/or confidentiality) litigations.  Undersigned counsel respectfully submits that he charges a reasonable hourly rate of $550 an hour for his time in matters where his clients pay for his time on an hourly basis.  The Firm charges a reasonable hourly rate of $250 an hour for staff members' time where the Firm's clients pay on an hourly basis.  The Firm's time in this matter, therefore, is the equivalent of approximately $18,264.50.  The Firm incurred $766.00 in out-of-pocket expenses related to filing the Action and service on Defendants.  The Firm's lodestar, therefore, is approximately 1.095 (*i.e,* $20,000/18,264.50 = 1.095).

In a typical case, the Firm would request the Court approve an attorneys' fee of one-third the Gross Settlement Fund (*i.e.*, $58,275).  In this case, however, the Firm is only requesting a fee of $20,000 in an effort to make room for a $20,000 service award to Named Plaintiff Jose Salazar for all of the time and effort he put into the case without further impacting the Net Settlement Fund

13

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT**

**Case No. 1:20-cv-8167-AEK**

to be distributed amongst the putative Collective and Class. The Firm is doing this in further recognition of the Defendants' demonstrated lack of an ability to withstand a greater judgment. The Firm's attorneys' fee, therefore, is reasonable under both the percentage method and the lodestar method which weighs heavily in favor of approving the Settlement Agreement.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court: (1) preliminarily approve the $175,000.00 maximum Gross Settlement set forth in the Proposed Settlement; (2) approve the proposed Notice and Forms and direct their distribution; (3) and schedule a final fairness hearing within 30 days after the deadline for Settlement Class members to timely submit Claim Forms, opt out, or file objections.

Respectfully submitted,

**WEISENBERG FIRM, PLLC**

Benjamin D. Weisenberg
Weisenberg Firm, PLLC
450 Lex Ave. – 4th Floor
New York, NY 10017
T: (917) 747-5303
F: (212) 365-5619
ben@weisenbergfirm.com

cc:     All counselors of record by ECF